ROBERT E. JOHNSON and REGINA JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; OCEAN ASPHALT CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket Nos. 4138-79, 4172-79.
United States Tax Court
T.C. Memo 1982-517; 1982 Tax Ct. Memo LEXIS 227; 44 T.C.M. (CCH) 1076; T.C.M. (RIA) 82517; September 13, 1982. *228 Robert E. Johnson, pro se for the petitioners in Docket No. 4138-79. James E. Johnson, an officer, for petitioner in Docket No. 4172-79. Robert B. Marino, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiencies in petitioners' federal income tax and additions to tax: Sec. 6653(a) [1]
Docket No.
Tax Year Ending
Deficiency
Addition to Tax
4138-79
12/31/72
$21,112
$1,056
12/31/73
46,572
2,329
12/31/74
127,469
6,373
4172-79
8/31/73
194,774
9,739
8/31/74
201,454
10,073
8/31/75
82,622
4,131
Petitioners in each case also claim overpayments of income tax for the years in issue. After concessions by both parties at trial the issues remaining for our decision in Docket No. 4138-79 are: (1) whether petitioners had unreported income from a construction project; (2) whether amounts received from a family corporation constitute capital gain or ordinary income; (3) whether amounts spent for a trip *229 to Bermuda constitute a deductible business expense; (4) whether amounts paid to a labor consultant constitute a deductible business expense; (5) whether amounts spent redecorating petitioners' office may be expensed or must be capitalized; (6) whether petitioners are entitled to deductions for certain amounts characterized on their tax return as depreciation; (7) whether petitioners are liable for the section 6653(a) addition to tax; (8) whether petitioners, as claimed in their petition, are entitled to additional deductions for unpaid New Jersey state tax judgments. The issues for decision in Docket No. 4172-79 are: (1) whether petitioner is entitled to deductions for the cost of gravel used or sold; (2) whether petitioner must accrue interest income on loans made to a related corporation; (3) whether petitioner is entitled to deduct as a business expense an amount paid to a subcontractor in December 1974; (4) whether petitioner is liable for the section 6653(a) addition to tax; (5) whether petitioner, as claimed in its petition, is entitled to an additional bad debt deduction; and (6) whether petitioner, as claimed in its petition, is entitled to an additional deduction concerning *230 unpaid New Jersey state tax judgments. We combine our findings of fact and opinion to facilitate the disposition of the contested issues. Some of the facts have been stipulated. [2] The stipulation and attached exhibits are incorporated herein by reference. Robert E. Johnson and Regina Johnson resided in Beachwood, New Jersey, when they filed their petition. The Ocean Asphalt Company, Inc., was a New Jersey corporation with its principal office in Beachwood, New Jersey, when it filed its petition. Petitioners in both cases are accrual basis taxpayers. Unreported Income
Ocean Pipe Company, Inc. ("Ocean Pipe") was owned in equal shares by petitioner Robert Johnson and Sal Mantione, an unrelated third party. Ocean Pipe was in the business *231 of laying and installing sewer and water pipe. During October, 1973, Ocean Pipe went out of business. It left uncompleted a job involving pipe installation for Lincoln Contractors, Inc.
Robert Johnson personally completed the job. He deducted the expenses on his income tax returns. Based on a review of petitioners' books and records, the respondent determined that petitioners had unreported income from the Lincoln Contractors' job of $46,916 in 1973 and $62,349 in 1974. At trial and on briefs petitioners admit that their books and tax returns failed to report income from this job. However, petitioners offer a different adjustment to income than the respondent's determination. Petitioners had two accounts for Lincoln Contractors. Respondent determined that these two accounts pertained to two different jobs. The account reflecting the assumption of the Ocean Pipe contract showed a negative receivable of $84,046.24 at the end of 1974. The other Lincoln Contractors' account reflected a positive receivable of $51,088.44 at the end of 1974. Petitioners argue that these balances should be netted in determining unreported income from the Ocean Pipe contract. Accordingly, *232 petitioners claim that the unreported income from the Lincoln Properties' job is only $32,465.28. We are not convinced by petitioners' analysis. Respondent determined that the accounts related to two different jobs. The income from one job was properly reported. But income from the Ocean Pipe contract was not reported at all. Petitioners introduced no evidence on this question. Respondent's determination is presumptively correct. Rule 142(a). [3] Accordingly, we think that the balances in the two Lincoln Contractors' accounts should not be netted in ascertaining petitioners' income from the Ocean Pipe contract. Petitioners also claim that they found an overstatement of sales income for the years 1974 in the amount of $70,026.54. Petitioners ask us to offset this amount against the underreported income from the Ocean Pipe contract. Petitioners provided no evidence at trial on the alleged overstatement of sales income. The evidence offered in petitioners' briefs is not properly before the Court. Accordingly, we find that petitioners failed to substantiate an overstatement of sales income. *233 Rule 142(a). Therefore, the underreported income from the Ocean Pipe contract may not be offset by any such amount. Finally, petitioners argue that the amount of income from the Ocean Pipe contract which they must recognize in 1973-1974 should be limited because some Lincoln Contractors' accounts receivable were settled in the late 1970's for substantially less than their face amount. Petitioners are accrual basis taxpayers. Apparently, they contend that they should not report some income in 1973-1974 because later events indicate that such amount is not properly accruable as income in 1973-1974. Petitioners failed to provide factual basis for the Court to consider this contention. They do not identify the accounts or the amounts involved. They failed to show that the subsequent settlement related to the assumption of the Ocean Pipe contract rather than the other Lincoln Contractors job. Also, they failed to demonstrate that the accounts receivable were wholly or partially worthless at the end of either 1973 or 1974. Section 166. Neither did they show that the collection of the accounts receivable was sufficiently doubtful in those years to preclude accrual. See Harmont Plaza, Inc. v. Commissioner,64 T.C. 632, 649-651 (1975), *234 affd. 549 F.2d 414 (6th Cir. 1977). As we noted in that case, the nonaccrual exception to the general rule requiring current accrual of accounts receivable has typically been applied where the debtor is insolvent or in fact bankrupt. Petitioners have made no such showing in this case, nor in fact, have they introduced any specific evidence regarding the status of the accounts receivable during the years in question. In sum, petitioners failed to carry their burden of proving error in respondent's determination on this matter. Accordingly, we hold that petitioners had unreported income in 1973-1974 in the amounts determined by the respondent. Rule 142(a). Characterization of Amounts Received from Corporation
Petitioners received the following amounts from Ocean Asphalt Company, Inc. ("Ocean Asphalt") during the tax years in issue: $125,000 in 1972; $150,000 in 1973; and $150,000 in 1974. Petitioners reported these amounts as capital gain. They contend that these amounts are installment payments from the sale of a gravel deposit to Ocean Asphalt. Respondent determined *235 that the amounts were ordinary income because no gravel deposit sale had taken place. Petitioner has the burden of proof on this issue. Rule 142(a). Ocean Asphalt was incorporated on July 31, 1963. It was owned by petitioner Robert Johnson, Oakley Witt and members of the Reichy family. In 1964 Robert Johnson and Oakley Witt bought out the Reichy group. In 1966 Oakley Witt sold his interest to the Oughtons. The Oughtons are the daughter and son-in-law of Robert Johnson's brother, James Johnson. By the end of 1968 Robert Johnson also had sold his interest in Ocean Asphalt to the Oughtons. During the tax years in issue the Oughtons were the sole owners of Ocean Asphalt. In the early 1960's James Johnson acquired a tract of land known as the Berkley tract. This land contained a large gravel deposit. Petitioner Robert Johnson purchased the Berkley tract from his brother in 1964. Ocean Asphalt leased the Berkley tract from 1963 to 1967. During this period Ocean Asphalt paid Robert Johnson 35 cents a ton for the gravel it mined on the Berkley tract. A contract between Robert Johnson, James Johnson and Ocean Asphalt reflected this arrangement. For each of the fiscal years *236 ended August 31, from 1963 through 1967, Ocean Asphalt's journal indicated a debit entry for cost of gravel sales and a credit entry for amounts due to Robert Johnson on gravel purchased. Robert Johnson testified that he sold the Berkley tract's gravel deposit in bulk to Ocean Asphalt in about 1966 for $5 million. James Johnson also testified that Robert Johnson sold the gravel in bulk to Ocean Asphalt. James Johnson's testimony is inconsistent, however, concerning the time of the alleged sale. At one point he said that the sale occurred at the beginning of 1968. At another point he testified that the sale occurred when Oakley Witt and Robert Johnson alone owned Ocean Asphalt, which places the sale between 1964 and 1966. At a third point James Johnson testified that the sale occurred while the Reichy group still owned part of Ocean Asphalt, which places the sale between 1963 and 1964. No transfer of the gravel deposit was recorded. On August 31, 1968, the following entry occurred in Ocean Asphalt's general journal: Debit
Credit
Gravel Deposit
$5,000,000
Contract Payable
$5,000,000
Explanation - to record
purchase of gravel deposit
from REJ [Robert Johnson]
as of 1/2/67.
*237 For the fiscal year ended August 31, 1973, Ocean Asphalt made the following journal entry: Debit
Credit
Contract Payable - REJ
$125,000
Cash
$125,000
Similar entries, though in different amounts, were made for the fiscal years ending August 31, 1974, and August 31, 1975. On November 20, 1967, Robert Johnson sold the Berkley tract to his wholly owned corporation, Johnson Enterprises, Incorporated. This corporation sold the Berkley tract to Ocean Asphalt in April, 1968. These sales were recorded. The deeds were absolute on their face, apparently reflecting the transfer of a fee simple absolute. Petitioners claim that the money they received from Ocean Asphalt during the years in issue were installment payments from the bulk sale of the Berkley tract's gravel deposit. Accordingly, petitioners claim capital gains treatment. Respondent determined that no bulk sale occurred. Respondent argues that ordinary income treatment is appropriate because petitioners failed to establish a basis for capital gain characterization. We agree with respondent. Robert Johnson and his brother James Johnson testified that a bulk gravel sale occurred. The books *238 of the family's corporation, Ocean Asphalt, also reflected such a transaction. However, the inconsistencies and unanswered questions in this record convince us that petitioners failed to sustain their burden of proving entitlement to capital gains treatment. Petitioners failed to identify the terms of the alleged bulk gravel sale. James Johnson's testimony inconsistently placed the sale, alternately, in 1968, 1964-1966 or 1963-1964. Ocean Asphalt's books place the effective date of the sale as January 2, 1967. Yet the books reported gravel purchases for the fiscal year ending August 31, 1967, as though the lease was still effective rather than as though a bulk purchase had occurred. These inconsistencies and lack of specificity do not help petitioners to carry their burden of proof. In addition, petitioners failed to produce a contract concerning the alleged bulk sale. Petitioners claim that a contract existed but that the Internal Revenue Service lost the only copy they had. We place little credence on petitioners' excuse. They failed to call the allegedly careless Revenue Agent to testify that a contract existed. Also, they retained ample copies of the lease arrangement *239 concluded in the mid-1960's. If a contract existed we believe petitioners would have had a copy. Petitioners provided no objective, third party evidence that a bulk sale of gravel occurred. Although they, in some instances, claimed that Oakley Witt signed a contract for such sale they did not call him to testify that a bulk sale had been concluded. Furthermore, petitioners' accountant testified that he had never seen a contract for a bulk sale of gravel. He understood that Ocean Asphalt had a right to mine gravel on the Berkley tract. But he did not know the nature of Ocean Asphalt's legal interest in the property, if any. In fact, the objective evidence implies that no bulk sale occurred. The deeds concerning the sales of the Berkley tract were absolute on their face. They imply that the tract sales passed a fee simple absolute. Also, because the Johnsons recorded the sales of the Berkley tract, even though the sales were merely among family entities, we think that they would have recorded a carved out sale of the gravel deposit if they had in fact sold it separately. Based on the record before us we conclude that no bulk sale of gravel occurred. Petitioners offered *240 no other justification for capital gain treatment of the amounts received from Ocean Asphalt. Accordingly, we hold that petitioners failed to satisfy their burden of proof. We sustain respondent's determination on this issue. Trip to Bermuda
Petitioners attended a National Pavement Association convention in Bermuda during 1973. Petitioners deducted the cost of Regina Johnson's share of the trip. Respondent disallowed this deduction because petitioners failed to substantiate that the amount was business expense. Section 162(a). Regina Johnson worked in the family business. She did bookkeeping, secretarial work and was in charge of the office staff. Robert Johnson testified that she helped in certain management decisions. For instance, Robert Johnson never made a major purchase or sale without her assistance. At the convention in Bermuda petitioners met other people in the construction and paving industry, attended meetings and purchased some equipment. We are convinced, therefore, that Regina Johnson's presence on the trip served some bona fide business purpose. See section 1.162-2(c), Income Tax Regs.
However, petitioner's testimony *241 convinces us that the trip to Bermuda, although it served some business purpose, was primarily personal in nature. Petitioner Robert Johnson testified concerning the trip, that "it was a vacation trip…. We went [to] meetings. They showed pictures and they made talks about 15 or 20 minutes a day, and the rest of the time we done as we pleased." This evidence convinces us that the trip was primarily personal in nature. Section 1.162-2(b)(2), Income Tax Regs.
The traveling expenses associated with such a trip are not deductible business expenses. Section 1.162-2(b)(1), Income Tax Regs. Expenses incurred at the destination of such a trip are deductible business expenses to the extent that they are properly allocable to a taxpayer's trade or business. Section 1.162-2(b)(1), Income Tax Regs. Petitioners in this case introduced no evidence to show what portion of their expenses incurred in Bermuda were properly allocable to business. Because of petitioners' failure of substantiation we must hold that they *242 are not entitled to any deductions for Regina Johnson's expenses for the Bermuda trip. Payments to Labor Consultant
Petitioners deducted $5,000 in 1972 and $4,200 in 1973 which were paid to Frank La Vechia to maintain peace with labor unions. Respondent disallowed these deductions in his notice of deficiency. On brief respondent concedes that petitioners properly deducted these amounts as business expenses, and we accordingly so hold. Office Redecoration
Petitioners spent $3,000 in 1972 to redecorate their office. They deducted the entire amount as an expense in 1972. Respondent determined that this expenditure should be capitalized.Petitioners introduced no evidence on this issue. Petitioners apparently concede the issue because they did not discuss it at trial or in their briefs. Accordingly, we hold that respondent's determination on this issue is correct. Rule 142(a). Depreciation Deductions
Respondent disallowed depreciation deductions of $154 in 1973 and $790 in 1974. Petitioners introduced no evidence concerning these deductions. Petitioners apparently concede the issue because they did not discuss it at trial or in their briefs. Accordingly, *243 we hold that respondent's determination on this issue is correct. Rule 142(a). Additions to Tax
Respondent determined that part of petitioners' underpayment of tax was due to negligence or intentional disregard of rules and regulations. Accordingly, respondent determined an addition to tax under section 6653(a) for each tax year in issue. We agree with respondent. The failure to report all the income from the Lincoln Contractors job justifies the imposition of the section 6653(a) addition to tax for 1973 and 1974. Petitioners agree that they erroneously failed to report all of their reportable income. Petitioners argue only that their books and records were of "poor quality" and "inadequate." Petitioners blame an employee for this state of affairs. Inadequacy of records does not excuse actions which otherwise justify imposition of the section 6653(a) addition to tax. Magnon v. Commissioner,73 T.C. 980, 1008-1009 (1980).Therefore we hold that respondent was correct in imposing the addition to tax for the years in which petitioners underreported their income. *244 Also, on the basis of the facts in this record we think that petitioners' characterization of the amounts received from Ocean Asphalt as capital gain rather than as ordinary income justifies the imposition of the addition to tax for all tax years in issue. On the facts before us we do not believe that there was a bulk sale of gravel during the late 1960's. Petitioners also failed to provide any other justification for characterizing the amounts received as capital gain. We hold that the section 6653(a) addition to tax should be imposed on petitioners for thi baseless characterization of income as capital gain. Issues Raised in Petition
Petitioners claimed in their petition that they overpaid their federal income tax for the years in issue. In their petition petitioners list several amounts which they claim are unpaid state tax judgments. They also claim additional expense deductions in the amounts of $90,755.58 for 1973 and $70,792.48 for 1974. It is unclear whether these latter figures are the amounts which petitioners claim to be deductible due to the unpaid state tax judgments or whether the two sets of figures constitute two separate claims of overpayment. If the *245 $90,755.58 and $70,792.48 figures represent a separate claim then petitioners are not entitled to deductions in these amounts because they presented no evidence to justify their deductibility. Rule 142(a). We also think that petitioners are not entitled to additional deductions concerning the unpaid state tax judgments. Petitioners failed to establish at trial the amounts, if any, of the unpaid taxes which are properly accruable in each tax year. Additional material in petitioners' brief is not evidence properly before the Court. Furthermore, petitioner Robert Johnson stated at trial that he did not intend ever to pay the taxes. He apparently thinks that he is not liable for the taxes and intends to fight any effort by the state to collect them. Under these circumstances the unpaid taxes are not accruable in the tax years before us because the fact of liability had not been fixed in those years. United States v. Consolidated Edison Co. of N.Y.,366 U.S. 380 (1961); Security Flour Mills Co. v. Commissioner,321 U.S. 281 (1944). Therefore, we hold that petitioners are not entitled to the additional deductions claimed in their petition. *246 Deductions for Gravel Used or Sold
For the tax years ending August 31, 1973, August 31, 1974, and August 31, 1975, petitioner Ocean Asphalt (hereinafter sometimes called "petitioner") deducted as cost of gravel used or sold $365,000, $340,000 and $100,000, respectively. Ocean Asphalt's accountant, who also prepared the corporation's tax returns, admitted that the company did not purchase any gravel in those years. Therefore, petitioner argues that the deductions represent a recovery for depletion. Section 611. To be entitled to a depletion deduction Ocean Asphalt must have had an economic interest in the gravel deposit during the tax years. Palmer v. Bender,287 U.S. 551 (1933); section 1.611-1(b)(1), Income Tax Regs.
This issue involves the same Berkley tract gravel deposit discussed earlier regarding the petitioners Johnson. As we concluded earlier, no separate sale of the gravel deposit occurred between Robert Johnson and Ocean Asphalt. Therefore, Ocean Asphalt had an economic interest in the gravel deposit only if it owned the *247 Berkley tract. As we noted earlier, the facts in the record indicate that Ocean Asphalt received the Berkley tract in fee simple absolute from Robert Johnson's corporation, Johnson Enterprises, Inc., in April, 1968. On August 15, 1969, Ocean Asphalt transferred the Berkley tract to a limited partnership called Ocean Asphalt, Limited. The Oughtons had a 99.99 percent interest in the partnership. James Johnson had a 0.01 percent interest in the partnership. The partnership sold the Berkley tract to another limited partnership, also called Ocean Asphalt Limited, on August 15, 1973. The tract apparently again was transferred among two other limited partnerships, also called Ocean Asphalt Limited, on November 2, 1973, and on December 12, 1973. Petitioners introduced no evidence concerning the owners of these entities. Accordingly, we find that they failed to satisfy their burden of showing that Ocean Asphalt, Inc., our corporate petitioners, owned the partnerships. Rule 142(a). The deeds recording these transactions appear to transfer a fee simple absolute in each case. As a result of these transfers we conclude that Ocean Asphalt, the corporate petitioner herein, did not own *248 the Berkley tract during the years in issue. The facts presented in this case convey the impression that the Johnson family engaged in a complicated and fast moving shell game in which they lost the pea. Petitioners must accept the tax dis-advantages of the form in which they chose to do business in addition to garnering the advantages which prompted their approach. See Moline Properties v. Commissioner,319 U.S. 436 (1943). Accordingly, we find that petitioner Ocean Asphalt had no economic interest in the gravel deposit. Therefore it is not entitled to depletion deductions related to the deposit.
Petitioner introduced no other evidence justifying its deductions for gravel used and sold. Therefore we hold that petitioner failed its burden of proving incorrect respondent's determination on this issue. Accrual of Interest Income
Respondent determined under section 482 that petitioner Ocean Asphalt should accrue unreported interest income in the following amounts: Tax Year Ending
Interest Income
8/31/73
$ 58,539
8/31/74
109,013
8/31/75
130,000
Respondent's attribution of this interest income is related to Ocean Asphalt's extension *249 of loans to the Berkley Water Company ("Berkley Water"). During the years in issue Ocean Asphalt was owned by the Oughtons. The Oughtons were James Johnson's daughter and son-in-law. During the years in issue James Johnson's wife owned 52 percent and his grandchildren by the Oughtons owned 42 percent of Berkley Water. James Johnson admitted at trial that he effectively controlled both corporations. Berkley Water is a water company regulated by the New Jersey State Public Utilities Commission. During the years in issue Ocean Asphalt and Berkley Water maintained their books and records and filed their income tax returns using the accrual method of accounting. Ocean Asphalt loaned $750,000 to Berkley Water before September 1, 1972. A non-interest bearing note dated March 23, 1972, memoralized this loan. Ocean Asphalt loaned Berkley Water additional amounts of $250,000, $100,000 and $300,000 on June 28, 1973, December 6, 1973, and August 1, 1974, respectively. Erkley Water's books and records indicated that Berkley Water repaid $100,000 to Ocean Asphalt in July, 1974. However, Ocean Asphalt's books and records did not indicate such a repayment. Berkley Water's gross *250 receipts from operations were $76,719.99, $91,435.34 and $100,042 for calendar years 1972, 1973 and 1974, respectively. On December 30, 1974, Berkley Water and Ocean Asphalt executed a $1,400,000 note bearing 10 percent interest. This note replaced the previously executed $750,000 note. As of August 31, 1975, Berkley Water had not repaid any of the principal of this $1,400,000 note. Berkley Water paid no interest to Ocean Asphalt during the years in issue. Ocean Asphalt did not accrue interest income arising from the Berkley Water loans on its tax returns for those years. However, Berkley Water accrued on its books and deducted in its tax returns for 1974 the interest due Ocean Asphalt. Berkley Water did not accrue or deduct such interest in other years. We would observe at this juncture that as to this issue, like most if not all of the others, the state of the record is, from petitioner's point of view, woefully inadequate. For example, there is only a bare scrap of evidence as to the circumstances or purpose of the substantial advances from petitioner Ocean Asphalt to Berkley Water, totaling at one time $1.4 million. Furthermore, as discussed subsequently, petitioner *251 argues for the first time in its Reply Brief that "[w]ater rates set by the P.U.C. are not adequate to operate the company and pay interest. A rate increase, if granted, will only provide for current interests on an approved debt." Aside from the gross receipts figures of Berkley Water for the relevant years, we are given no information whatever about the water rates set by the P.U.C. Petitioner further states that "[t]he Berkley Water Rate case was such public knowledge the petitioner did not think to bring evidence." Petitioner's brief then proceeds to quote selectively from what is said to be a 59-page decision dated August 26, 1980, of an administrative law judge, none of which has been properly brought into these proceedings. Petitioner's selected quotations from the judge's decision are juxtaposed and truncated in such a manner as to render them useless to us, except that we are able to agree with petitioner that in New Jersey a rate increase, if obtained, will only permit ayment of current interest (not accumulated and unpaid interest) on a P.U.C.-approved debt. In the words of James Johnson, who testified on this point, "now I submit to Your Honor that's the law that *252 you cannot lose money this year and expect the future customers to pay for that loss, so this New Jersey state law says." See N.J.S. 48:3-9 (West 1969). With these preliminary observations, we now proceed to our consideration of this issue. Section 482 provides: SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.
In any case of two or more organizations, trades, or business (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. James Johnson testified at trial that he effectively controlled Ocean Asphalt and Berkley Water. These entities were owned by his wife, children and grandchildren. *253 The question of common control for purposes of section 482 is a question of effective control, whether direct or indirect, rather than a question of common ownership. Charles Town Inc. v. Commissioner,372 F.2d 415, 419-420 (4th Cir. 1967), affg. a Memorandum Opinion of this Court; section 1.482-1(a)(3), Income Tax Regs. By this standard the loans between Ocean Asphalt and Berkley Water were loans between commonly controlled entities. Where one member of a controlled group of entities makes a loan to another member of the group but charges no interest on the loan, the respondent may allocate arm's-length interest to the creditor. Latham Park Manor, Inc. v. Commissioner,69 T.C. 199 (1977), affd. without pulished opinion 618 F.2d 100 (4th Cir. 1980); section 1.482-2(a)(1), Income Tax Regs.
Petitioner does not contest this basic rule. Instead, petitioner maintains that the interest income allocated to it by section 482 is not accruable in the years in issue because such interest was *254 uncollectible. Petitioner points out that Berkley Water was losing money. Berkley Water tried to get a rate increase throughout the 1970's, but the New Jersey State Public Utilities Commission did not grant the request. Berkley Water entered receivership in 1980.
Under the accrual method of accounting a taxpayer includes an income item in gross income when all the events have occurred to fix the right to receive such income and when the amount can be determined with reasonable accuracy. Section 1.451-1(a), Income Tax Regs. However, if it is reasonably certain that the income will not be collected in the tax year or within a reasonable time thereafter, then a taxpayer is justified in not accruing the item. Corn Exchange Bank v. United States,37 F.2d 34 (2d Cir. 1930). This exception has typically been applied where the debtor is insolvent or in fact bankrupt, but the financial difficulty of the debtor alone does not constitute the requisite absence of reasonable expectancy of collection. Harmont Plaza, Inc. v. Commissioner,64 T.C. 632, 650 (1975), *255 affd. 549 F.2d 414 (6th Cir. 1977). And the exception to the general rule of accrual relating to a lack of reasonable expectancy of collection is to be applied narrowly so that the exception does not swallow the rule.See Cappuccilli v. Commissioner,T.C. Memo. 1980-347, aff'd. 668 F.2d 138 (2d Cir. 1981). In applying these rules to this case we note that the reasonable expectancy analysis must be applied to the facts as they existed during the tax years in issue. It is apparently undisputed that the water company operated at a loss throughout the '70s, culminating in the 1980 receivership. Berkley was on a calendar year basis, and, as indicated, its gross receipts for 1972, 1973 and 1974 were, except for 1972, less than the interest income imputed to Ocean Asphalt by the Commissioner for fiscal years 1973 and 1974, and only slightly greater than such interest in 1972. Other than the aforesaid gross receipts and the $650,000 cash infused into Berkley Water by Ocean Asphalt during the years in issue, Berkley Water had no other source of funds. Thus, there is some indication that the $650,000 was advanced to supply Berkley Water *256 with operating funds. James Johnson testified that Ocean Asphalt built the water company with money realized from the sale of gravel. While the original $750,000 advanced to Berkley Water, and the additional $250,000, $100,000 and $300,000 were characterized as loans, given the fact that these amounts were effectively permanently locked in by the requirements of the P.U.C. and New Jersey law, the advances, inadvertently or not, ultimately became in effect contributions by Ocean Asphalt to Berkley Water's capital. Consequently, we are convinced that petitioner's chances of recovering any of the advances themselves, much less any interest thereon, was, for all intent and purposes, non-existent. This being the case, petitioner has no reasonable expectancy of payment. Cf. Cappuccilli v. Commissioner,668 F.2d 138 (2d Cir. 1981), affg. T.C. Memo. 1980-347. In our judgment, this case falls within the "narrow exception" to the previously adverted to general rule of accrual, and petitioner is not required to accrue the imputed interest income in controversy. Accordingly, we hold for petitioner on this issue. Subcontractor Expense
Ocean Asphalt *257 accrued and deducted a $300,000 subcontractor expense in the tax year ending August 31, 1974. Respondent allows this deduction. Ocean Asphalt paid $200,000 of this expense in December, 1974. Ocean Asphalt took a deduction of this amount in the tax year ending August 31, 1975. Respondent disallowed this deduction because he determined that it represented a double deduction for the same subcontractor expense which had been deducted the previous year. Petitioner argues that it overreported its income during this period.Petitioner claims (1) an offset against the increase in taxable income arising from respondent's disallowance of the subcontractor deduction in the tax year ending August 31, 1975; and (2) a claim for refund due to the overpayment of taxes in the tax year ending August 31, 1974. Again, petitioner failed to provide an adequate factual base for consideration of its argument because it did not substantiate its claim of overreported income. Respondent said that Ocean Asphalt's income was overstated by $100,000 in the tax year ending August 31, 1974. But, according to respondent, the job which generated this income was connected with the subcontractor expense *258 now in issue. Respondent determined that the subcontractor expense was overstated by the same amount as the income. Thus, a wash occurred in which Ocean Asphalt's income for the tax year ending August 31, 1974, was overreported by $100,000 and its deductions for the same year were overreported by $100,000. We find respondent's approach consistent with the meager facts available for our consideration.Petitioner, of course, has the burden of proof on this issue. Rule 142(a). We find that petitioner failed to satisfy its burden. Accordingly, we hold that petitioner is not entitled to an offset in tax year ending August 31, 1975, nor is petitioner entitled to a refund for overpayment in tax year ending August 31, 1974, because the overreported income properly was treated by the respondent in the tax year ending August 31, 1974. Petitioner introduced no evidence to show that the $200,000 deduction disallowed by respondent in the tax year ending August 31, 1975, was not a second deduction for an expense previously deducted. Therefore, we hold that respondent's determination on this issue is correct.Rule 142(a). Additions to Tax
Respondent determined that part of petitioner's *259 underpayment of tax was due to negligence or intentional disregard of rules and regulations. Accordingly, respondent determined an addition to tax under section 6653(a) for each tax year in issue. We agree with respondent. Taking deductions for gravel used or sold when petitioner did not purchase gravel or have an economic interest in the gravel constitutes negligence in this case. This underpayment of tax arose from misuse of or careless use of the corporate and partnership forms. Petitioner is responsible for accurately reporting its income. We find that its failure to do so on the facts of this case clearly justify the imposition of the addition to tax for all three years. The double deduction for the subcontractor expense also clearly warrants imposition of the addition to tax.This underpayment of tax arose from poor bookkeeping. Although petitioner claims that an employee is responsible for the state of their books this is not an adequate excuse. Magnon v. Commissioner,73 T.C. 980, 1008-1009 (1980). We hold that respondent's determinations on this matter are correct. Bad Debt Deductions Raised in Petition
Petitioner made the following *260 claim in his petition: Many of the accounts receivable carried on the books of account were incurred in 1970 and 1971. Of the balance due August 31, 1975, $137,989.88 has not been and will not be collected. The petitioner is entitled to a bad debts deduction for that amount at that time.
FYE $137,989.88 Once again petitioner failed to satisfy its burden of proof on the issue. Petitioner introduced no evidence at trial to identify the debts or petitioner's basis in them or to show whether the accounts receivable became wholly or partially worthless in the tax year ending August 31, 1975. Section 166. Therefore, we hold that petitioner is not entitled to additional deductions for bad debts in the tax year ending August 31, 1975. Rule 142(a). Unpaid State Tax Judgments
Petitioner claimed in its petition that it was entitled to accrue and to deduct in the tax years in issue amounts for unpaid state tax judgments. James Johnson, petitioner's officer, said that Ocean Asphalt, like Robert Johnson, intended never to pay these judgments. Therefore, as we discussed previously with reference to Robert Johnson, petitioner is not entitled to accrue and deduct any amounts on *261 account of these judgments because the fact of liability was not fixed during the years in issue. United States v. Consolidated Edison Co.,366 U.S. 380 (1961); Security Flour Mills Co. v. Commissioner,321 U.S. 281 (1944). Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect for the years in issue, unless otherwise indicated.↩
2. We note that petitioner Regina Johnson did not sign the stipulation of facts. Regina Johnson received notice of the trial but failed to appear for trial. Consequently, we could dismiss the case as to Regina Johnson for failure to properly prosecute. Rule 149(a), Tax Court Rules of Practice and Procedure. Instead, we will decide the case as though Regina Johnson had signed the stipulation. See Rule 149(a), supra.↩
3. All rule references are to the Tax Court Rules of Practice and Procedure.↩