T.C. Memo. 2011-229

UNITED STATES TAX COURT

DOUGLAS AND GINA RUNDLETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13561-09.                Filed September 26, 2011.

R issued a notice of deficiency determining
deficiencies in Ps' Federal income taxes for Ps' 2005 and
2006 tax years.  The deficiencies primarily stem from R's
determination that Ps could not deduct expenses exceeding
income from their timeshare activity.

<u>Held</u>:  Ps are liable for a portion of the deficiency
for each year as decided herein.

<u>Joseph E. Mudd</u>, for petitioners.

<u>Kenneth C. Peterson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of petitioners' income tax liabilities for 2005 and 2006 as determined by respondent.  After concessions,[1] the issues for decision are:

(1) Whether $11,821 of the travel expenses petitioners claimed on their 2005 Schedule C, Profit or Loss From Business, are nondeductible personal expenses;

(2) whether petitioners are entitled to deduct losses related to their timeshare operations on the Schedule C for the

---

[1]Petitioners concede that for the 2005 tax year they failed to report interest income of $574, failed to report capital gain income of $3,408, overreported ordinary dividends by $732, and underreported qualified dividends by $448.  Respondent concedes that petitioners are entitled to itemized deductions for interest and taxes paid on the Rossmoor property of $13,350 for the 2005 tax year.  Petitioners concede that they withdrew a certificate of deposit early and incurred a penalty of $5,671 in 2005 and that the penalty is not a deductible trade or business expense. Petitioners concede that of the $52,754 disallowed "Schedule C-TS" 2005 expenses, legal expenses of $18,565 are not deductible on Schedule C, interest and taxes of $16,812 are not deductible on Schedule C, and maintenance expenses of $5,556 related to the Rossmoor property are not deductible on Schedule C.

Petitioners concede that for the 2006 tax year they improperly reported $1,849 as ordinary dividends that should have been reported as qualified dividends and failed to report capital gains of $4,147.  Petitioners concede that they are entitled to deductions claimed on Schedule A, Itemized Deductions, for taxes and interest of $16,265 but not Schedule C deductions for the 2006 tax year.  Petitioners concede the $22,130 adjustment to Schedule C expenses for the 2006 tax year.

timeshare activity (Schedule C-TS) of $14,706 and $34,365 for the 2005 and 2006 tax years, respectively.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of settled issues, the stipulated facts, and the accompanying exhibits are hereby incorporated by this reference. Petitioners resided in California at the time they filed their petition. Petitioner wife (Ms. Rundlett) spent 35 to 40 hours per week as an insurance agent, and petitioner husband (Mr. Rundlett) spent 35 to 40 hours per week in the construction business during the years at issue.

Petitioners became interested in a timeshare rental activity in 2005 while staying at a resort where a list of timeshares for rent and for sale was posted. Ms. Rundlett called the numbers on the list to find out the cost of those timeshares and how much they were renting for. On the basis of those calls, she determined that the return on the timeshare activity was higher than the interest petitioners were earning on their bank accounts, so petitioners "gave it a whirl".

Petitioners purchased their first timeshare unit in 2005 at Laguna Surf Resort in Laguna Beach, California. By purchasing a 1 week timeshare unit, petitioners owned the right to use a furnished unit for 7 days during a particular season. The complexes where the units were located provided onsite

management, including, but not limited to, maid service, repair and maintenance, front desk service, distribution and collection of keys, grounds maintenance, and other guest services.  By the end of 2005, petitioners owned up to four timeshare units at Laguna Surf Resort.

During 2006 petitioners purchased two more timeshare units at Laguna Surf Resort and four timeshare units at Laguna Shores Resort in Laguna Beach, California.  Petitioners may have also purchased one timeshare unit at The Strand in Oceanside, California.  By the end of 2006 petitioners may have owned 11 timeshare units.[2]

Petitioners and their minor daughter traveled a lot during 2005.  They traveled for a variety of reasons, including previewing timeshares, attending insurance agent classes, and taking vacations.  Petitioners incurred $29,071.72 of expenses during their stays at about 15 hotels and resorts during 2005.

During their travels related to the timeshare activity, petitioners attended timeshare previews and met with representatives who discussed the details of the resorts and gave them tours.  Petitioners were particularly interested in the postpurchase rental program.  Ms. Rundlett compared the income

---

[2]The parties stipulated only "may" have owned a stated number of units because petitioners did not remember or were unable to prove exactly how many units they owned at a given yearend.  Petitioners did not present any documents of ownership for any of the timeshare units.

that each unit could generate versus the fees that she would have to pay and the purchase price. The process of viewing the units and listening to the presentations normally took 4 or 5 hours. Generally, because of lead time and marketing requirements, a timeshare unit could not be rented out in the year it was purchased.

Ms. Rundlett's ultimate goal with respect to the timeshare activity is to own 52 units and use the income to supplement the couple's retirement income.[3] Ms. Rundlett explained that she has been updating her business plan from the beginning, maintaining a spreadsheet of what they own, what it generates, and the costs.[4] Since its inception in 2005, the activity has never been profitable.

Each year, in order to rent the timeshare units to third parties, Ms. Rundlett would reserve a specific week for each unit during the season that petitioners owned the right to use that unit. After she had secured the unit for a particular week, Ms. Rundlett advertised by word of mouth and by posting flyers at the resorts. It normally took Ms. Rundlett from 6 to 8 hours per unit per year on average to reserve the unit, market it, and rent

---

[3]There is no evidence in the record that this was Ms. Rundlett's original goal in 2005 when she purchased her first timeshare unit. At that time petitioners were interested in purchasing one unit to experiment with the activity.

[4]Neither the spreadsheet nor the business plan was presented at trial.

it out.  Ms. Rundlett does not know how the other owners of the timeshare units used those units during the years at issue.

From 2005 through 2008 petitioners reported on their Federal income tax returns the following amounts of combined salary income, gross income from the timeshare activity, expenses from the timeshare activity, net profit or (loss) from the timeshare activity, and taxable income.

| Year | Mr. and Ms. Rundlett's Combined Salary Income | Gross Income From Timeshare Activity | Expenses From Timeshare Activity | Net Profit or (Loss) From Timeshare Activity | Taxable Income |
|------|------|------|------|------|------|
| 2005 | $168,770 | $2,375 | $69,835 | ($67,460) | $19,712 |
| 2006 | 172,725 | 11,470 | 67,965 | (56,495) | 30,515 |
| 2007 | 179,105 | 11,050 | 59,087 | (48,037) | 42,511 |
| 2008 | 196,955 | 16,100 | 61,813 | (45,713) | 33,045 |

On March 26, 2009, respondent issued petitioners a statutory notice of deficiency determining income tax deficiencies of $15,445 and $13,646 for the 2005 and 2006 tax years, respectively.  Petitioners timely filed a petition with this Court on June 4, 2009.  A trial was held in Los Angeles, California, on June 15, 2010.

OPINION

I.  Burden of Proof

The Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the

determination is improper. See Rule 142(a);[5] <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a)(1), the burden of proof as to a factual issue that affects the taxpayer's tax liability may be shifted to the Commissioner. This occurs where the "taxpayer introduces credible evidence with respect to * * * such issue", and the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Code and "maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a). Petitioners did not argue that the burden should shift, and they failed to maintain required records or comply with the substantiation and cooperation requirements. Accordingly, the burden of proof remains on petitioners.

II. <u>Respondent's Contentions</u>

Respondent contends that the $11,821 travel expense deduction for 2005 comprised nondeductible personal expenses. Respondent also contends that $14,706 and $34,365 of the losses from the timeshare activity in 2005 and 2006, claimed on Schedule C, cannot be deducted because: (1) The expenses were not paid or

---

[5]All section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

incurred in carrying on a trade or business engaged in for profit pursuant to section 183; (2) the timeshare units were dwelling units used by petitioners or other owners as residences pursuant to section 280A; or (3) the timeshare activity losses were passive losses pursuant to section 469.

III. Travel Expense Deductions

    A.   General Rules

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of their income and entitlement to any deductions or credits claimed. Sec. 6001 (the taxpayer "shall keep such records"); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940). In contrast, "personal, living, or family expenses" are generally nondeductible. Sec. 262(a).

In certain circumstances, the taxpayer must meet specific substantiation requirements to be allowed a deduction under section 162 or section 212.  See, e.g., sec. 274(d).  The heightened substantiation requirements of section 274(d) apply to:  (1) Any traveling expense, including meals and lodging away from home; (2) any item with respect to an activity in the nature of entertainment, amusement, or recreation; (3) any expense for gifts; or (4) the use of "listed property", as defined in section 280F(d)(4), including any passenger automobiles.

In order to deduct such expenses, the taxpayer must substantiate "by adequate records or by sufficient evidence corroborating the taxpayer's own statement":  (1) The amount of the expense or other item; (2) the time and place of the travel, entertainment, amusement, recreation, or use of the property; (3) the business purpose of the expense or other item, and (4) the business relationship to the taxpayer of the persons entertained, using the facility or property, or receiving the described gift. Sec. 274(d).

To satisfy the adequate records requirement of section 274, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use.  Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative

evidence created at or near the time of the expenditure to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement and evidence" to the level of credibility of a contemporaneous record.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

B.  Schedule C-TS Travel Expense Deduction of $11,821 for 2005

Petitioners claimed an $11,821 expense deduction for travel in 2005.  Although petitioners submitted their credit card bills and certain receipts and respondent stipulated charges at resorts for 2005, at trial Ms. Rundlett had difficulty identifying which of the charges were incurred in connection with the timeshare activity and which of the charges were personal. While we appreciate that petitioners' total charges for travel in 2005 were $29,071.72 and they deducted only $11,821 in connection with the timeshare activity, in adding up the charges Ms. Rundlett identified at trial, either $8,239.19 or $15,127.19 of the charges was connected with petitioners' timeshare activity.[6]

At trial Ms. Rundlett explained that of those expenses, the charges at the Mauian Hotel and Hale Napil in Lahaina, Hawaii; one of the charges, believed to be the January stay, at the

---

[6]The difference between these two numbers is a July 28, 2005, $6,888 charge at the La Jolla Beach Club.  Ms. Rundlett stated that "a portion of that I'm sure" was related to the timeshare activity, but she did not elaborate on how much of it was so related.

Disney Grand California Resort (although, she did not for certain remember which of the Disney trips); a charge at Mammoth Mountain Ski Resort; a charge in July at Laguna Surf Resort; a charge at the Four Seasons in Los Angeles; and a charge at the W Hotel in San Francisco were all related to the timeshare activity.

Ms. Rundlett explained that when she originally prepared information for her return preparer she was very specific about which charges were for the timeshare activity and which were for pleasure, but she did not have the documents to demonstrate this at trial and she had trouble 4 or 5 years later remembering which trips were which.[7] Ms. Rundlett explained that when she prepared the information she had to "go through all my travel bills and then go back and determine where we did previews and what percentage would be appropriate because all the time isn't for business, only a portion of the days. We tried to go through and be fair on what made sense for business."

The heightened or strict substantiation requirements of section 274(d), discussed above, apply to travel expenses. Assuming arguendo that petitioners have met the heightened burden of section 274(d), section 162(a)(2) specifically excludes from

---

[7]Petitioners did attempt to introduce a document that Ms. Rundlett prepared during the audit to demonstrate the differences among the resort charges; however, it was admitted only for the stipulated purpose of establishing what Ms. Rundlett turned over during audit. The document was prepared during audit and would therefore not qualify as contemporaneous documentation even if it had been unconditionally admitted.

deduction any amount that is "lavish or extravagant under the circumstances". Petitioners' home was approximately 25 miles from Newport Beach when they stayed at that Four Seasons, approximately 15 miles from Anaheim, California (where the Disney Grand Californian Resort is located), 100 miles from La Jolla, California (where the La Jolla Beach Club is located), and 38 miles from Laguna Beach, California (where the Laguna Surf Resort and Laguna Shores Resort are located).

Section 162(a) also requires that the expenses be "ordinary and necessary" to be allowed as a business expense deduction. Ms. Rundlett explained that she would bribe her family to tour a timeshare by staying the night, usually at a lavish resort, and then going to the beach the next day. In order to get her family excited about the timeshare activity, Ms. Rundlett would "mix absolutely business with pleasure * * * and we added on to try to make it enjoyable for the stay." We do not find that petitioners have met the requirements of sections 162 and 274(d); thus the $11,821 of claimed travel expenses is not deductible.

IV. Section 183 "Hobby Loss"

Respondent next contends that the losses related to petitioners' timeshare activity are not deductible because the activity was not engaged in for profit within the meaning of section 183. Section 183(a) generally disallows deductions attributable to activities not engaged in for profit. Section

183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent stipulation to the contrary, has held that an activity is engaged in for profit if the taxpayer's "predominant, primary or principal objective" in engaging in the activity was to realize an economic profit independent of tax savings. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212. Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.

No single factor or set of factors is conclusive in determining whether an activity is engaged in for profit, nor is the number of these factors for or against the taxpayer necessarily conclusive in that respect. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. All facts and circumstances with respect to the activity must be taken into account. Sec. 1.183-2(b), Income Tax Regs.

A. The Manner in Which the Taxpayer Carries On the Activity

The fact that the taxpayer carries on the activity in a businesslike manner may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Three common inquiries are considered in this context: (1) Whether the taxpayer maintained complete and accurate books and records for the activity; (2) whether the taxpayer conducted the activity in a manner substantially similar to those of other comparable activities that were profitable; and (3) whether the taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability. Giles v. Commissioner, T.C. Memo. 2005-28; sec. 1.183-2(b)(1), Income Tax Regs.

Ms. Rundlett explained that she has been updating her business plan from the beginning, maintaining a spreadsheet of timeshare units petitioners own, what they generate, and the

costs. Yet none of these documents were presented at trial. Originally Ms. Rundlett's business plan seems to have been a fly-by-the-seat-of-the-pants experiment beginning when she decided to give "it a whirl" and purchase one timeshare to see how the activity went. Petitioners stipulated that they did "not have any written documents showing estimated profit calculations made prior to purchasing timeshares in 2004 through 2006." The record shows that petitioners did not "prepare any business or profit plans, profit or loss statements, balance sheets, or financial break-even analyses" for the activity. See Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion 188 F.3d 507 (6th Cir. 1999).

There is no evidence in the record that petitioners conducted the activity in a manner substantially similar to those of other comparable activities that were profitable or changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability. This factor favors respondent.

B. The Expertise of the Taxpayer or His Advisers

"Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices." Sec. 1.183-

2(b)(2), Income Tax Regs.  There is no evidence in the record that petitioners ever studied the business of renting timeshare units or consulted with experts.  This factor favors respondent.

C. <u>The Time and Effort Expended by the Taxpayer in Carrying On the Activity</u>

> The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit.  A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit.  * * *  [Sec. 1.183-2(b)(3), Income Tax Regs.]

Petitioners did not devote a substantial amount of time to the timeshare activity.  Both petitioners had full-time jobs requiring between 35 and 40 hours per week.  Ms. Rundlett explained at trial that it took from 6 to 8 hours per unit per year from the time of reserving the unit to actually renting it out.  This factor favors respondent.

D. <u>The Expectation That Assets Used in the Activity May Appreciate in Value</u>

"The term 'profit' encompasses appreciation in the value of assets, such as land, used in the activity."  Sec. 1.183-2(b)(4), Income Tax Regs.  The value of the assets used in the timeshare activity and their anticipated appreciation or depreciation was not discussed at trial, nor was any evidence submitted on this issue.  This factor is neutral.

E. The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable."  Sec. 1.183-2(b)(5), Income Tax Regs. Petitioners did not address this factor at trial, and there is no evidence that petitioners carried on any successful businesses in a manner substantially similar to that of the timeshare activity. This factor is neutral.

F. The Taxpayer's History of Income or Losses With Respect to the Activity

A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not being engaged in for profit. * * * [Sec. 1.183-2(b)(6), Income Tax Regs.]

In the 2 years at issue petitioners claimed $123,955 in losses from an activity that has never been profitable.  We recognize that the years at issue were the very first 2 years of the activity and the losses have been decreasing since its inception.  Because the timeshare activity has never made a profit, but was still in the startup stage during the years at issue, we find this factor neutral.

G. The Amount of Occasional Profits, If Any, From the Activity

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent." Sec. 1.183-2(b)(7), Income Tax Regs. The timeshare activity has yet to earn any profits; however, Ms. Rundlett believed that the return would be higher than interest on her bank accounts. The record does show that the amount of the loss is decreasing each year; however, in the 4 years in the record, the activity has lost $217,705 and earned only $40,995. We find this factor favors respondent.

H. The Financial Status of the Taxpayer

"Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." Sec. 1.183-2(b)(8), Income Tax Regs. Petitioners earned substantial income from their full-time jobs, and the losses from the timeshare activity resulted in substantial tax benefits. During the years at issue petitioners earned a combined average in excess of $170,000 a year from their outside jobs, and they deducted an average amount in excess of $62,000 per year on their joint Federal income tax returns on

account of the timeshare activity losses.  We find this factor favors respondent.

I. <u>Elements of Personal Pleasure or Recreation</u>

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved."  Sec. 1.183-2(b)(9), Income Tax Regs.  However, "We also note that a business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility."  <u>Jackson v. Commissioner</u>, 59 T.C. 312, 317 (1972).

Ms. Rundlett testified that her family was mixing business with pleasure.  Petitioners and their daughter spent many nights and dollars staying in expensive resorts, even when they visited timeshare units within driving distance from their home.  Ms. Rundlett explained that her family hated going to the previews for the timeshares and that she would have them stay the night so that they could go to the beach the next day and make it an enjoyable trip.  Ms. Rundlett did spend work time reserving and renting the units that we would not classify as pleasurable or recreational.  This factor is neutral.

After considering all of the above factors as applied to the unique facts and circumstances of this case, and all other facts we consider relevant, we conclude that the timeshare activity was

not engaged in for profit within the meaning of section 183. Therefore petitioners are not entitled to deduct expenses in excess of gross income from the activity.

V.    Section 280A

Because we have found that petitioners were entitled to deduct the activity's expenses only to the extent of gross income under section 183 discussed above, we need not determine whether the timeshare units were dwelling units used by petitioners or other owners as residences pursuant to section 280A.

VI. Passive Activity Losses

Because we have found that petitioners were not entitled to deduct the activity's expenses beyond the gross income from the timeshare activity, we do not need to determine whether the losses were passive.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

under Rule 155.