T.C. Memo. 2020-127

UNITED STATES TAX COURT

MALIK H. FRANKLIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3855-18.                          Filed September 3, 2020.

Malik H. Franklin, pro se.

<u>David M. Carl</u> and <u>Trent D. Usitalo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  By notice of deficiency dated November 16, 2017,

respondent determined a $65,363 deficiency, a $6,537 section 6551(a)(1) addition

to tax, and a $13,073 section 6662(a) accuracy-related penalty with respect to

[*2] petitioner's Federal income tax for 2014 (year at issue).[1]  After concessions,[2] the issues for decision are:  (1) whether meal and entertainment expenses and travel expenses are deductible as claimed on petitioner's Form 1040, U.S. Individual Income Tax Return, and Schedule C, Profit or Loss From Business; (2) whether petitioner is entitled to deduct business losses relating to certain loans and business properties; and (3) whether petitioner is liable for the accuracy-related penalty and the late-filing addition to tax.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  Petitioner resided in the State of California when the petition was timely filed.

I.    Petitioner's Background

Petitioner holds bachelor degrees in computer science and economics from Dartmouth College and a master of business administration degree from the Tuck

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]Petitioner conceded respondent's $136 adjustment to his interest income and $39,758 adjustment to his Schedule C depreciation and sec. 179 expenses.

[*3] School of Business at Dartmouth. In 2003 petitioner married Wendy Liu, with whom he had one child.

On February 17, 2007, petitioner and Ms. Liu purchased a timeshare property in Las Vegas, Nevada (timeshare property). In addition to the timeshare property, petitioner and Ms. Liu jointly owned residential real property in San Ramon, California (San Ramon property). Petitioner and Ms. Liu divorced in 2010. On October 29, 2014, Ms. Liu transferred her interest in the timeshare property to petitioner by quitclaim deed.

Between 2005 and 2012 petitioner worked as a real estate investment banker with Bank of America Securities and then with RBC Capital Markets. For 2013 and part of 2014 he rented an apartment in Brooklyn, New York, with his fiance, Olanika Fajana. On March 15, 2014, petitioner and Ms. Fajana moved to an apartment in Jersey City, New Jersey, and on March 28, 2014, they were married. Shortly thereafter, on June 10, 2014, petitioner and Ms. Liu sold the San Ramon property. During 2014 petitioner's son and Ms. Liu resided exclusively in California. Petitioner saw his son and Ms. Liu while on trips to California for which he claimed business deductions.

**[\*4]** II.     <u>Northbridge Group, Northbridge Partners, and Integrated Health Centers</u>

In 2014 petitioner provided real estate brokerage services on behalf of Northbridge Group, Inc. (Northbridge Group), a California corporation.  Petitioner worked as an independent contractor and was compensated a fixed percentage of the brokerage fees Northbridge Group charged its clients. Northbridge Group reported on Form 1099-MISC, Miscellaneous Income, that it paid petitioner $293,250 in 2014 in nonemployee compensation.

In addition to Northbridge Group, petitioner provided real estate investment consulting services in 2014 as a member of Northbridge Partners, LLC3 (Northbridge Partners), a California limited liability company.[3]  Petitioner reported no income or losses in relation to his work for Northbridge Partners that year.

In 2014 petitioner also performed real estate investment consulting for Integrated Health Centers (IHC).  IHC's business purpose was to develop a network of high quality hospitals in Lagos, Nigeria.  Petitioner reported no income from his services for IHC but claimed business deductions for travel expenses and meals and entertainment expenses in connection with IHC.

---

[3]Northbridge Group and Northbridge Partners were organized and managed by the same individual.  On any given development project, Northbridge Group served as the brokerage affiliate and Northbridge Partners provided investment consulting and financial advisory work.

**[\*5]** At all relevant times petitioner did not maintain an office outside of his residences on the east and west coasts. Petitioner's actual work was done mostly on his computer and phone.

III.   Petitioner's Schedule C

Petitioner untimely filed his Form 1040 for 2014. He attached Schedule C to his return and reported gross income of $293,250 and business expenses of $141,402.[4] He prepared his 2014 tax return and did not keep contemporaneous records of his business expenses for the year.

After receiving notice that the IRS was examining his 2014 return, petitioner created three travel logs to substantiate his travel expenses. The first travel log was created immediately after he received notice of examination of his 2014 return and was submitted with the petition. This first travel log was an incomplete record of his travel expenses and was created in large part from memory. He subsequently created a second travel log based on his credit card statements, bank account statements, and receipts for 2014, and he submitted this second travel log with accompanying receipts to respondent's Office of Appeals after he filed the petition. He subsequently created a third travel log dated February 19, 2019, which was delivered to respondent's counsel. None of his

[4]Petitioner's gross receipts came from Northbridge Group alone.

[*6] three travel logs explains in detail the connection between the expenses listed and his work with Northbridge Group, Northbridge Partners, or IHC.  At trial he conceded that his foreign travel costs were not deductible as business expenses.

Petitioner also created a meal log that he submitted to respondent's Office of Appeals after filing his petition.  Petitioner's meal log included expenses for meals at restaurants both foreign and domestic, all ranging from $50 to $300.  Petitioner's meal log included several charges for meals with his former spouse and his current spouse and asserted unconvincingly that the purpose of these meetings was to discuss real estate opportunities.  Petitioner did not explain the connection between the expenses listed and his work with Northbridge Group, Northbridge Partners, or IHC.

Respondent disallowed petitioner's Schedule C deductions for travel expenses of $64,655 and meal and entertainment expenses of $8,610.

IV.    Sales of Business Property

Petitioner reported losses of $86,640 on his Form 4797, Sales of Business Property, which consisted of the following:  (1) worthless loans to Sterling Analytics, Inc. (Sterling), of $45,804; (2) worthless loans to Strategic Urban Development Alliance, LLC (SUDA), of $18,575; (3) loss of software of $3,495; and (4) an abandoned timeshare of $18,766.  Following the examination,

[*7] respondent disallowed the entirety of these losses. Petitioner subsequently submitted documents to respondent's Office of Appeals amending the losses reported on his Form 4797 to $95,230. His amended losses consisted of the following: (1) loans to Sterling totaling $50,000; (2) a loan to SUDA of $17,500; (3) loss of software of $3,495; and (4) an abandoned timeshare of $24,235.[5]

A.    Bad Debt Deductions

1.    Sterling

In 2011 and 2012 petitioner made two loans of $25,000 each to Sterling, a Delaware corporation in San Francisco, California, that produces software used by real estate investors. On November 5, 2012, petitioner and Sterling consolidated the two loans and executed a promissory note under which Sterling agreed to pay petitioner $50,000 and interest by November 5, 2017, or upon default. Petitioner had the option to convert this debt into equity, but he never exercised this option.

On his Form 4797 petitioner reported loans he had made to Sterling were worthless and deducted their entire value of $50,000 minus allowable depreciation

---

[5]According to the stipulation of facts and petitioner's amended petition, petitioner's reported losses consisted of the following items: (1) two worthless loans to Sterling totaling $50,000; (2) a worthless loan to SUDA totaling $35,000, of which petitioner deducted $17,500; (3) loss of software totaling $3,495; and (4) an abandoned timeshare property totaling $24,235. However, respondent's pretrial memorandum states that petitioner reported a loss of $18,766 for the abandoned timeshare, rather than $24,235.

[*8] of $4,196, totaling $45,804. Petitioner did not submit information with his return establishing that the loans were worthless or how he determined the allowable depreciation. When petitioner determined the loans were worthless, he lacked specific knowledge about the value of Sterling's assets or liabilities. Petitioner stated that it became clear in 2014 that Sterling's business was struggling, was not winning new customers, and was on a path to failure. Petitioner never attempted to contact Sterling to collect on the note before or during 2014, and he never brought suit to collect on the note from Sterling.

2. SUDA

Petitioner claimed as deductible losses $18,575 in loans made to SUDA, a real estate development company in Oakland, California. Petitioner lent SUDA and its managing partner and chief executive officer, Alan Dones, a total of $35,000, which was evidenced by a promissory note dated August 8, 2014, and due February 8, 2015. The note granted petitioner a security interest in five parking stalls in Oakland. The loan proceeds were used to facilitate a real estate development project in Oakland. The promissory note was convertible into equity in the development project at a value of 1-1/2 times the original total loan amount of $35,000, i.e., $52,500, but petitioner never exercised this option.

**[*9]** On his Form 4797, petitioner claimed a loss of $18,575 attributable to the loans.[6] Petitioner determined this amount by identifying the difference between his convertible equity position, $52,500, and the loan principal, $35,000. When petitioner determined the loans were worthless, he lacked specific knowledge about the values of Mr. Dones' and SUDA's assets or liabilities, and he believed the value of the collateral exceeded the amounts of the loans. Mr. Dones did not pay the debt when due, and petitioner first contacted him regarding collection of the debt on February 13, 2015.

    B.    <u>Loss of Software</u>

Petitioner claimed as a deductible loss $3,495 for software used in his real estate consulting business. Petitioner acquired the software on October 30, 2012. The software was lost after a computer crash in 2014. Petitioner does not know his initial cost basis in the software or the method of depreciation used for the period before the computer crash in 2014.

---

[6] On his Form 4947 petitioner claimed a loss of $18,575. In a written statement to respondent's Office of Appeals submitted after the petition was filed, petitioner wrote that "the tax filing shows an error in the amount of $18,575, this should be $17,500."

**[*10]** C.    Abandoned Timeshare Property

Petitioner reported a loss of $18,766 on his Form 4797 in connection with the timeshare property.[7]  He provided no evidence other than his inconsistent testimony showing that he used the timeshare in his trade or business, that the timeshare was abandoned, or that his interest in the timeshare was worthless in 2014.

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In order to shift the burden as to any relevant factual issue, the taxpayer must introduce credible evidence and have complied with all substantiation and record keeping requirements imposed by the Code.  Sec. 7491(a)(1) and (2).  The Commissioner generally bears the burden of production and the taxpayer bears the burden of persuasion with respect to an accuracy-related penalty under section 6662.  See

---

[7]After the filing of the petition, petitioner submitted a written statement to respondent's Office of Appeals indicating that he erred when he reported on his Form 4797 a loss of $18,766 in the timeshare.  He asserted that the actual loss he incurred in connection with the timeshare was $24,235.

**[\*11]** sec. 7491(c). The Commissioner also bears the burden of production and the taxpayer bears the burden of persuasion with respect to a taxpayer's liability for additions to tax. Id. Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

## II. Schedule C Expenses

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Petitioner bears the burden of proving that reported business expenses were actually paid and were ordinary and necessary. See sec. 162(a); Rule 142(a). An expense is ordinary if it is normal, usual, or customary in the taxpayer's trade or business, and it is necessary if appropriate or helpful for such a business. See Deputy v. du Pont, 308 U.S. 488, 495 (1940); see also Lingren v. Commissioner, T.C. Memo. 2016-213, 112 T.C.M. (CCH) 569 (2016).

Section 274(d) imposes strict substantiation requirements for deductions claimed for travel, meals, entertainment, and vehicle expenses. No such deduction is allowed unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure. Sec. 274(d); sec. 1.274-5T(a), (b), and (c),

**[\*12]** Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985).

Adequate records for this purpose require the taxpayer to maintain an account

book, log, or similar record and documentary evidence that together are sufficient

to establish each element of the expenditure. Id. para. (c)(2)(i), 50 Fed. Reg.

46017. In order to be adequate, records must be prepared or maintained in such a

manner that each recording of an element or expenditure is made at or near the

time of the expenditure or use. Id. subdiv. (ii). While a contemporaneous log is

not required to substantiate the deduction, a taxpayer's subsequent reconstruction

of his or her expenses does require corroborative evidence with a high degree of

probative value to support such a reconstruction, in order to elevate that

reconstruction to the same level of credibility as a contemporaneous record. Id.

subpara. (1), 50 Fed. Reg. 46016.

To be deductible, travel expenses must be ordinary and necessary, have

been incurred while the taxpayer was away from home, and have been incurred in

the pursuit of a trade or business.[8] Liljeberg v. Commissioner, 148 T.C. 83, 92-93

(2017), aff'd, 907 F.3d 623 (D.C. Cir. 2018). Travel expenses that are lavish or

---

[8]At trial respondent focused on resolving the issue of petitioner's tax home. Because we find that petitioner has not met the substantiation requirements under sec. 274 with respect to any of the travel expenses at issue, we need not address the issue of petitioner's tax home.

[*13] extravagant under the circumstances are not deductible. Sec. 162(a)(2); see

Rundlett v. Commissioner, T.C. Memo. 2011-229, 102 T.C.M. (CCH) 307 (2011).

If travel is for both business and personal purposes, the taxpayer has the burden to

prove the primary purpose of the travel. Johnson v. Commissioner, T.C. Memo.

1982-517, 44 T.C.M. (CCH) 1076 (1982), aff'd, 729 F.2d 1447 (3d Cir. 1984).

The primary purpose of travel is a question of fact, which places importance on the

time spent on each type of activity. Id.

For a variety of reasons we do not find petitioner's travel log and testimony

credible. Petitioner misapprehends the burden for claiming business deductions in

connection with his travel expenses. He appears to believe that he is entitled to

such deductions so long as he asserts that his travel expenses were motivated by

business purposes. He did not prepare or produce contemporaneous documents to

support his assertion that his travel expenses were for business purposes. Rather,

his documentary evidence consists of travel logs he created after he received

notification of examination and thus fails the "adequate records" test under section

274(d). Neither petitioner's travel logs nor his testimony convinces the Court that

his expenses were ordinary or necessary or incurred in the pursuit of a trade or

business. With respect to petitioner's travel between California and New York, in

particular, he provided no evidence to establish the business purposes for these

**[*14]** trips, and there is no way to distinguish whether any trip was made primarily for a business purpose or a personal one, e.g., to visit his son. Accordingly, because petitioner did not meet the strict substantiation requirements under section 274(d), we will sustain respondent's determination that his travel expenses are not deductible.

Personal meal expenses are generally not deductible, unless they are ordinary and necessary and constitute traveling expenses under section 162. Sec. 1.262-1(b)(5), Income Tax Regs. These expenses are subject to the strict substantiation requirements of section 274(d). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., supra. As with his travel expenses, petitioner misapprehends the burden for claiming business deductions in connection with his meal expenses. Petitioner appears to believe that he is entitled to such deductions so long as he asserts that his expenses were motivated by business purposes. Petitioner did not convince the Court that his meal expenses were for business purposes rather than personal ones. Accordingly, because petitioner did not meet the strict substantiation requirements under section 274(d), we will sustain respondent's determination that his meal expenses are not deductible.

**[*15]** III.    Bad Debt Losses

Section 166(a)(1) provides that, for any business or nonbusiness debt, "[t]here shall be allowed as a deduction any debt which becomes [wholly] worthless within the taxable year." To give rise to a deduction under section 166(a)(1), a debt must have become wholly worthless during the tax year at issue. Sec. 1.166-3(b), Income Tax Regs. Worthlessness is a question of fact based on all the relevant circumstances, which considers, among other things, the debtor's financial condition and the value of any security. Sec. 1.166-2(a), Income Tax Regs. A debt is not worthless to the extent the collateral securing the debt has value. Black v. Commissioner, 52 T.C. 147 (1969). No deduction is allowed to a taxpayer who makes no requests for payment and makes no attempts to collect the debt or to ascertain its worthlessness. Ellisberg v. Commissioner, 9 T.C. 463 (1947). The parties treated the loans to Sterling and SUDA as business debts.

A.    Sterling

Petitioner has not established that any amount of the debt was worthless in 2014. See sec. 1.166-3(a)(2)(iii), Income Tax Regs. He did not provide documentary evidence or testimony pointing to specific, identifiable events that caused him to believe the consolidated Sterling loans were uncollectible or became worthless in 2014. See Crown v. Commissioner, 77 T.C. 582, 598 (1981);

[*16] Flood v. Commissioner, T.C. Memo. 2001-39; sec. 1.166-2(a), Income Tax Regs. He did not attempt collection or contact Sterling during 2014 regarding any concern about repayment, and he never brought suit to collect on the note from Sterling. He lacked specific knowledge about the value of Sterling's assets or liabilities. Accordingly, we will sustain respondent's determination to disallow these losses.

B. SUDA

Petitioner made no collection efforts on the loans in 2014 and began collection efforts in February 2015 after the loans became due. He did not submit information with his return establishing the loans were worthless in 2014. He provided no documentary evidence or detailed testimony explaining what led him to believe the loans were worthless. See Crown v. Commissioner, 77 T.C. at 598; Flood v. Commissioner, T.C. Memo. 2001-39; sec. 1.166-2(a), Income Tax Regs. He testified that, when he made the loans in August 2014, he believed the value of the collateral was more than the value of the loan proceeds and provided no evidence that the collateral lost its value in the final four months of 2014. He never exercised the option to convert the debt into equity or otherwise received an equity interest in the development project or SUDA. He did not meet his burden

[*17] of persuading this Court that the loans were worthless in 2014.

Accordingly, we will sustain respondent's decision to disallow the loss.

IV. Loss of Software

Losses sustained during the tax year that are not compensated by insurance or otherwise are deductible subject to applicable limitations. See sec. 165(a); sec. 1.165-1(a), Income Tax Regs. The allowance of losses for the permanent withdrawal of depreciable property from use in a trade or business or in the production of income are governed by regulations covering the applicable depreciation method. See secs. 1.165-2(c), 1.167(a)-8, Income Tax Regs.

Computer software which is readily available for purchase by the general public or not acquired in connection with the acquisition of a trade or business may be depreciable under section 167(a). Sec. 167(f)(1)(A); sec. 1.197-2(c)(4), Income Tax Regs. In general, computer software that is depreciable under section 167(a) must be depreciated using the straight-line method and a useful life of 36 months. Sec. 167(f)(1)(A); sec. 1.167(a)-14(b), Income Tax Regs. Where an asset is permanently retired from use in the trade or business or in the production of income but is not disposed of by the taxpayer or physically abandoned, recognized loss will be measured by the excess of the adjusted basis of the asset at the time of

**[*18]** retirement over the estimated salvage value or over the fair market value of the property at retirement. Sec. 1.167(a)-8(a)(3), Income Tax Regs.

Petitioner did not offer documentary evidence or testimony supporting his reported cost basis of $6,990. Further, we did not find his testimony credible concerning his reported basis in the software at the time of retirement or depreciation deductions taken on the software before its retirement. Ultimately, petitioner did not carry his burden to prove both his initial cost basis in the software and his adjusted basis as of the time of loss. Accordingly, we will sustain respondent's decision to disallow any deduction for the loss.

V.     Abandoned Timeshare

An ordinary loss deduction for the loss of usefulness or obsolescence of nondepreciable property is allowed for the year the loss is actually sustained if (1) the loss is incurred in a business or a transaction entered for profit; (2) the loss arises from the sudden termination of usefulness in the business or transaction; and (3) the property is permanently discarded from use, or the business or transaction is discontinued. Sec. 1.165-2(a), Income Tax Regs. Where a depreciable asset used in a trade or business or held for the production of income is retired by actual physical abandonment, a loss will be recognized if the taxpayer intends to discard the asset irrevocably so that it will neither be used again by the

[*19] taxpayer nor retrieved by the taxpayer for sale, exchange, or other disposition. Sec. 1.167(a)-8(a)(4), Income Tax Regs.

Petitioner did not establish that he used the timeshare in his trade or business or that it was held for the production of income. Further, he put forward no evidence from which this Court can determine whether the property was abandoned in 2014. Accordingly, we will sustain respondent's determination to disallow petitioner's claimed loss on the timeshare.

VI.    Section 6651 Addition to Tax

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file his 2014 Federal income tax return timely. Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a return timely unless it is shown that such failure was due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985). A failure to file a Federal income tax return timely is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time, typically for reasons outside the taxpayer's control. See McMahan v. Commissioner, 114 F.3d 366, 368-369 (2d Cir. 1997), aff'g T.C. Memo. 1995-547; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. It is well established that the filing of an unsigned return form is

[*20] not the filing of a valid return.  See Elliott v. Commissioner, 113 T.C. 125, 128 (1999); see also Mohamed v. Commissioner, T.C. Memo 2013-255, at *11-*12.

With an extension, petitioner's 2014 Federal income tax return was due on October 15, 2015.  Respondent's records reflect that respondent received petitioner's return on December 14, 2015, nearly two months after the due date for filing.  Petitioner testified that he filed his return before October 15, 2015, and that respondent rejected the return because it was not signed, which accounted for the delay.  However, he also acknowledged submitting the return several times and provided testimony acknowledging he submitted his 2014 return with a signature date of February 29, 2016.  He did not claim or argue a mistake or error in dating the return February 29, 2016.  He failed to introduce any credible evidence showing that he had reasonable cause for filing his 2014 return late.  Respondent has carried his burden of production under section 7491(c).  Accordingly, we will sustain respondent's imposition of the addition to tax under section 6651(a)(1) for 2014.

VII.  Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to "negligence"

**[*21]** or "disregard" of rules or regulations or a substantial understatement of income tax. Section 6662(c) defines "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines "disregard" as any careless, reckless, or intentional disregard. See sec. 1.6662-3(b)(1) and (2), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

To satisfy respondent's burden of production under section 7491(c), respondent must produce evidence showing, inter alia, that his representatives complied with section 6751(b)(1). See Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016). The record contains a timely civil penalty approval form that shows that respondent's representatives complied with section 6751(b)(1). Respondent has met the burden of production in this case, and it is petitioner's burden to establish that the imposition of the penalty is not appropriate. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted

[*22] with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner did not make any arguments at trial regarding the applicability of the reasonable cause exception. In addition, the record does not show that the reasonable cause exception applies to this case. Therefore, we will sustain respondent's determination that petitioner is liable for the accuracy-related penalty for the year at issue.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.